UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARONE ACEE,

    Appellant,

 -against-                6:14-CV-0259 (LEK)

ONEIDA SAVINGS BANK; ACCESS
FEDERAL CREDIT UNION,

    Appellees.

---

BOULDER MEADOWS, INC.,

    Appellant,

 -against-                6:14-CV-0258 (LEK)

ONEIDA SAVINGS BANK; ACCESS
FEDERAL CREDIT UNION,

    Appellees.

---

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

Appellants Marone Acee ("Acee") and Boulder Meadows, Inc. ("Boulder Meadows") (collectively, "Appellants" or "Debtors") appeal a decision by U.S. Bankruptcy Judge Diane Davis, finding that Appellants did not qualify as "family farmers" under 11 U.S.C. § 101(18) and were therefore ineligible for Chapter 12 protection. Dkt. Nos. 1;[1] 1-2; 1-6 ("Appellant Brief"); 9

---

[1] The Bankruptcy Court previously granted Debtors' Motion for joint administration, and these separate filings have therefore been consolidated. See No. 6:14-CV-0259, Dkt. No. 3-15 ("Bankruptcy Order") at 1 n.1. All citations to the Docket refer to Case No. 6:14-CV-0259, which has been designated as the lead case, unless otherwise noted.

("Trustee Brief"). Appellee Oneida Savings Bank ("Appellee," or "OSB") has filed a Response, and Appellants have filed a Reply. Dkt. Nos. 12 ("Response"); 13 ("Reply"). For the following reasons, the Bankruptcy Court's decision is affirmed in part, and reversed in part.

## II.   BACKGROUND

### A. Factual Background

Acee is the sole shareholder of three separate corporate entities: (1) Boulder Meadows, which owns approximately 300 acres in Vernon and Augusta, New York (the "Boulder Meadows Property"); (2) Vernon National Shooting, Inc. ("Vernon National"), which does not own any assets, and (3) Stop Seven Operating Corporation ("Stop Seven"), which issued stock but owns no hard assets or equipment and conducts farming operations to grow strawberries, corn, tomatoes and other fruits and vegetables. B.R. Order at 3-4.

To help generate revenue, Acee began a pheasant hunting operation on the Boulder Meadows Property. Id. at 4. Acee placed a portion of the Boulder Meadows Property into the Conservation Reserve Program ("CRP"), which is administered by the U.S. Department of Agriculture's Farm Service Agency ("FSA"), and then rented that land to Vernon National. Id. Acee purchases the pheasants from a third party because he is not a licensed breeder. Id. Acee houses the birds for two to three weeks in a former barn on the Boulder Meadows Property before he releases them. Id. In addition, Acee became licensed through Cornell to make and sell food products using crops grown by Stop Seven. Id. at 5.

### B. Procedural Background

On August 31, 2012, Appellants filed for relief under Chapter 12 of the U.S. Bankruptcy Code. B.R. Order at 1. OSB and Access Federal Credit Union ("AFCU") each filed objections to

confirmation of the Chapter 12 plans. Id. at 2. On November 11, 2013, U.S. Bankruptcy Judge Diane Davis issued a Memorandum-Decision and Order finding that neither Acee nor Boulder Meadows qualified as a "family farmer" under 11 U.S.C. § 101(18), and thus both were ineligible for Chapter 12 protection. Id. at 16. Appellants filed a Motion for reconsideration of the Bankruptcy Order, which was denied in the Bankruptcy Court's Memorandum-Decision and Order dated January 10, 2014. Dkt. No. 1-2 ("Reconsideration Order"). This appeal ensued.

## III. STANDARD OF REVIEW

On appeal, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. Cnty. of Clinton v. Warehouse at Van Buren St., Inc., No. 12-CV-1636, 2013 WL 2145656, at *1 (N.D.N.Y. May 15, 2013) (citing R2 Invs., LDC v. Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). Following review, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013.

## IV. DISCUSSION

Appellants argue that the Bankruptcy Court erred in the following ways: (1) improperly calculating the "farm-debt test" under § 101(18)(A) with respect to Acee; (2) finding that the debt associated with Acee's principal residence did not arise out of a farming operation; (3) finding that Boulder Meadows was not engaged in a "farming operation"; and (4) assessing Boulder Meadows' eligibility under Chapter 12 even though no objection to its eligibility was filed. App. Br. at 4-5.

3

### A. Farm-Debt Test

To qualify as a "family farmer" under the Bankruptcy Code, the individual must satisfy, in relevant part, the "farm-debt test," meaning that the individual's:

> aggregate debts do not exceed $4,031,575[1] and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse.

18 U.S.C. § 101(18)(A). The issue raised on appeal is the proper construction and application of the principal residence debt when computing the farm-debt test. See App. Br.

Noting that "[t]here are no reported decision that address in detail the debt calculation itself," the Bankruptcy Court interpreted the statute as follows: (1) if the principal residence debt arises from a farming operation, then that amount is included in both the numerator and denominator; (2) however, if the principal residence debt does not arise from a farming operation, then that amount is excluded from the numerator but still included in the denominator. See Recons. Order. at 7. After finding that Acee's principal residence debt did not arise from a farming operation, the Bankruptcy Court therefore excluded that amount from the numerator, but included it in the denominator, which resulted in finding that only 43% of Acee's aggregate debt constituted farm-related debt. Id.

Appellants argue that the Bankruptcy Court's interpretation of this provision constituted legal error. Specifically, Appellants assert that if the principal residence debt does not arise from a farming operation, then it should be excluded from both the numerator and denominator. App. Br. at 11-13. Thus, Appellants argue that the Bankruptcy Court committed legal error, after finding that the principal residence debt was not farm related, by including that amount in the denominator. Id.

4

Although this issue was only briefly reached in the Bankruptcy Order, Appellants argued it in their Motion for Reconsideration and Judge Davis addressed it thoroughly in the Reconsideration Order. The Bankruptcy Court noted that, while no court has yet to provide a specific formulation or meaningful discussion of the provision at issue, it found support for its interpretation of the statute in the legislative intent behind the enactment of Chapter 12. See Recons. Order at 10-12. Moreover, Judge Davis found that, although not binding, she was persuaded by In re Saunders, 377 B.R. 772, 776 (Bankr. M.D. Ga. 2007), where the court found that "[b]ecause the business debt secured by the farm cannot be treated as farm-related debt, Debtor's farm-related debt *consists of less than half of his total debt*." (emphasis added).

Although mindful of the lack of legal authority on this issue, the Court respectfully disagrees with Judge Davis's reliance on In re Saunders, as that case did not involve the precise issue raised by Appellants. Indeed, in In re Saunders, the court began its analysis by stating that "[t]he key question in this case is whether loans secured by farmland used to operate a *car dealership* constitute debt "aris[ing] out of a farming operation." Id. at 774 (emphasis added). Thus, In re Saunders did not concern principal residence debt, nor did it provide any reasoning or analysis as to how the relevant provision should be applied.

The Court is persuaded, however, by In re Woods, 743 F.3d 689, 696 (10th Cir. 2014). In a lengthy discussion on application of the farm-debt test, the Tenth Circuit stated:

> Under the rule, ordinarily the debt for one's principal residence is not included in the aggregate debt;[2] on the other hand, the exception provides that if such debt "arises out of" a farming operation, then it is included in the aggregate-debt calculation and also

---

[2] For clarification purposes, the "aggregate debt" constitutes the denominator and the "farm debt" constitutes the numerator. In other words, Farm-Debt Test = Farm Debt/Aggregate Noncontingent, liquidated debt.

5

constitutes farm debt for purposes of the rule (because the debt "arises out of" a farming operation). In other words, if the exception applies, the aggregate debt and farm-debt portion of the aggregate debt increase by the same amount, which necessarily increases the proportion of one's debt that "arises out of" a farming operation.

Id. The Court reads this language to unambiguously provide that under the general rule, where principal residence debt is not farm related—as Judge Davis found here—"it is *not* included in the aggregate debt [i.e. denominator."]. Id. (emphasis added). Thus, the Court is persuaded that Appellants are correct—if the principal residence debt is not farm related, then it should be excluded from both the numerator and denominator—and finds that the Bankruptcy Court erred in its construction of the farm-debt test under § 101(18)(A).

### B. Acee's Principal Residence Debt

The next issue before the Court is whether the Bankruptcy Court erred in its determination that Acee's principal residence debt did not arise out of a farming operation under § 101(18)(A). Judge Davis found that Acee's principal residence debt did not arise out of a farming operation because:

> Acee has done no more than testify that he utilizes his personal residence as a home office from which he conducts certain business functions, including, but not limited to, the payment of bills. No testimony was elicited from Acee regarding the use of the home equity or mortgage proceeds, and no evidence was presented to prove that the mortgages secure farm debt.

B.R. Order at 15. Appellants argue that they have demonstrated "some connection" between the principal residence debt and the farming activity, and thus that debt should have been included in computing the farm-debt test. App. Br. at 13-14 (citing In re Saunders, 377 B.R. 776 and In re Marlatt, 116 B.R. 703, 705 (Bankr. D. Neb. 1990)). However, as Judge Davis correctly found, it is the *purpose* of the debt which determines whether it arises out of a farm operation. See Recons. Order at 13 (listing cases). Appellants have not provided any additional facts or legal authority to

6

support their argument, and thus the Court finds that the Bankruptcy Court did not err in concluding that Acee's principal residence debt did not arise out of a farming operation.

### C. Application of Farm Debt Test to Acee

With that framework in mind, the Court now turns to computing the farm debt test as construed in this Memorandum-Decision and Order. Because the Court agrees with Judge Davis that Acee's principal residence debt does not arise from a farming operation, it is excluded from both the numerator and denominator. Judge Davis found—and Appellants do not dispute—that, excluding the principal residence debt (because it did not arise out of a farming operation), the farm debt (the numerator) totaled $236,438.82. B.R. Order at 15. Judge Davis found the aggregate noncontingent, liquidated debt (the denominator) totaled $545,827.89. Id. However, because the amount of principal residence debt should also be subtracted from the denominator, the Court finds the appropriate aggregate debt amount is $253,437.89.[3] As a result, the Court finds that 93% of Acee's debt arises from a farming operation, which exceeds the 50% threshold for Chapter 12 eligibility. Therefore, the Court finds that the Bankruptcy Court erred in concluding that Acee did not satisfy the farm-debt test for purposes of Chapter 12 protection.

### D. Boulder Meadows - Farming Operation

Appellants offer two arguments in support of their contention that Boulder Meadows is a "family farmer" under § 101(18). First, Appellants argue that the Bankruptcy Court erred in finding Boulder Meadows' collection of rent from Vernon National, which is engaged in farming, insufficient to qualify Boulder Meadows as a farming operation. App. Br. at 14-15. Second,

---

[3] Although not stated explicitly, it is clear from Judge Davis's analysis that she found $292,390.00 to constitute principal residence debt. See B.R. Order at 15. Thus, the Court may subtract this amount to determine the aggregate debt here.

Appellants argue that Boulder Meadows' placement of some of its acreage into the CRP is also sufficient to qualify it as a farming operation.  Id.

As to Appellants' first argument, the Bankruptcy Court found that "[w]here, as here, a corporation is paid by farmers or lessees for services but does not derive income from its own farming operation or production efforts and therefore does not play an active role in the process or take any direct risk, the corporation does not meet the 'farming operation' requirement."  B.R. Order at 12-13 (citing In re Van Air Flying Serv., Inc., 146 B.R. 816, 818 (Bankr. E.D. Ark. 1992)) (listing cases).  In support of their contention that collecting rent from a farming operation is sufficient to qualify the landlord as a farming operation, Appellants rely on In re Lamb, 209 B.R. at 762, where the court stated that "[i]f the lessee uses the rented land for farming operations, some of the risks of farming are indirectly imparted to the lessor, thereby supporting a conclusion that the rental income from such property should itself be considered income from a 'farming operation.'"  However, Appellants' reliance on this language is misplaced.  In In re Lamb, the debtor was indisputably a farmer, and the issue was only whether a portion of the debtor's farm, which it had leased to other farmers, could be included in the debtor's income as arising out of a farming operation.  See id.  In other words, in In re Lamb, the court had already decided that the debtor was engaged in a "farming operation," see id. ("Debtor was, himself, engaged in farming operations through his partnership interest in DO–MY Dairy."), and was only addressing whether additional revenue streams could be considered in computing its farm-related income.  Here, Appellants have not argued that Boulder Meadows itself was engaged in farming operations, and therefore In re Lamb is distinguishable.

As to Appellants' argument concerning its involvement in the CRP, the Bankruptcy Court found that Boulder Meadows did not face the risk associated with family farming operations

8

because "Boulder Meadows' income is stabilized and guaranteed for as long as the Boulder Meadows Property remains in the CRP." B.R. Order at 12. In support of their challenge, Appellants rely on In re Fenske, 96 B.R. 244, 247 (Bankr. D.N.D. 1988), where the court stated that "[t]he fact that a portion of the land is enrolled in CRP or an ASCS set aside does not remove the resulting income from the farm related category." However, the In re Fenske court continues,

> Those individuals who while actively engaged in farming, avail themselves of such programs and thereby maximize the profitability of their operations are no less engaged in a farming operation. *The only exception is where the farmer . . . becomes merely a passive recipient of investment income. In that case income derived from wholesale cash renting of land or CRP enrollment is not derived from a farming operation.* The Debtors in the instant case are actively farming and intend on doing so for the foreseeable future.

Id. (emphasis added). Here, it is undisputed that Boulder Meadows is not directly engaged in farming and is merely a corporate landlord for Vernon National and Acee's activities. Therefore, In re Fenske is distinguishable from this case. Thus, the Court finds that the Bankruptcy Court did not err in finding that Boulder Meadows is not a "farming operation" under § 101(20).[4]

### E. Boulder Meadows' Chapter 12 Eligibility

Appellants' final argument is that the Bankruptcy Court erred in assessing Boulder Meadows' eligibility under Chapter 12 because no party ever objected to its eligibility. App. Br. at

---

[4] The Court notes that Appellants devote their entire Reply to a new theory, that Boulder Meadows is a farming operation because it is owned by one family and thus all relevant entities—Boulder Meadows, Acee, and Vernon National—should be considered in determining Boulder Meadows' eligibility. See generally Reply. However, "[t]o prevent unfairness to the litigants, courts apply a general rule that 'new arguments may not be made in a reply brief.'" DVL, Inc. v. Gen. Elec. Co., 811 F. Supp. 2d 579, 592 (N.D.N.Y. 2010) aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp., 490 F. App'x 378 (2d Cir. 2012) (quoting Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999)). Accordingly, the Court has not considered this argument.

9

15. The Bankruptcy Court stated in a footnote, "OSB's objection in Boulder Meadows' case does not raise an eligibility challenge, yet the parties have proceeded as if the objection had properly done so. Given the same and the interconnection between Acee and Boulder Meadows . . . the Court will address the qualifications of both Debtors for eligibility under chapter 12." B.R. Order at 2 n.3. Appellants' argument must be rejected because they have provided no legal authority demonstrating that the Bankruptcy Court's decision was erroneous. Moreover, Appellants filed a Motion for reconsideration of the Bankruptcy Order, yet did not raise this issue; thus, the Bankruptcy Court did not have an opportunity to address Appellants' argument, nor does the Court have a finding to review. Furthermore, Appellants have not presented a challenge to the joint administration of the claims by Acee and Boulder Meadows. Therefore, the Court is not persuaded that the Bankruptcy Court committed legal error in determining Boulder Meadows' eligibility.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Appellant Marone Acee's Appeal (No. 12-cv-0259, Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED**, that Appellant Boulder Meadows, Inc.'s Appeal (No. 12-cv-0258, Dkt. No. 1) in **DENIED**; and it is further

**ORDERED**, that the November 12, 2013, Order of the Bankruptcy Court denying Appellants Chapter 12 eligibility is **AFFIRMED in part and REVERSED in part**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that to the extent the November 12, 2013, Order of the Bankruptcy Court found Acee Marone not a "family farmer" under § 101(18), and thus ineligible for Chapter 12

protection, that decision is **REVERSED**.  However, to the extent the November 12, 2013, Order of the Bankruptcy Court found Boulder Meadows not a "family farmer" under § 101(18), that decision is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	March 31, 2015
	Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge